UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | | |
|---|---|---|
| BRANDON R. BRUIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-57-HRW |
| | ) | |
| V. | ) | |
| | ) | |
| WARDEN JOSEPH P. MEKO, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Plaintiff Brandon R. Bruin is an inmate confined in the Eastern Kentucky Correctional Complex ("EKCC") located in West Liberty, Kentucky. Proceeding without counsel, Bruin has filed a civil rights complaint asserting claims under 42 U.S.C. § 1983, alleging that various officials employed at the Little Sandy Correctional Complex ("LSCC")[1] violated his federal constitutional rights. [D. E. No. 1; supplemented at D. E. No. 4] The Court has previously granted Bruin *in forma pauperis* status. [D. E. No. 6]

The Court has conducted a preliminary review of Bruin's complaint because he has been granted pauper status and because he asserts claims against government officials. 28 U.S.C. §§, 1915(e)(2)(B), 1915A. Because Bruin is not

---

[1] The LSCC is located in Sandy Hook, Kentucky. Bruin states that he was incarcerated in the LSCC in late 2013 and early 2014.

1

represented by an attorney, the Court liberally construes his claims and accepts his factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court concludes that Bruin's Eighth and Fourteenth Amendment claims must be dismissed, but that his First Amendment claims alleging interference with his incoming legal mail warrant a response from certain defendants.

## ALLEGATIONS OF THE COMPLAINT

Bruin alleges that from late September 2013 to late January 2014, Defendant Jerry Barker, LSCC Correctional Officer, either filed, or had his subordinates file, several frivolous disciplinary reports against him charging him with violating various prison policies.[2] [D. E. No. 1, pp. 4-5, ¶¶ 24-32] Bruin alleges that Barker's actions constituted harassment and caused him to suffer "mental anguish and hardship." [*Id.*, p. 5, ¶ 37] Bruin alleges that on January 31, 2014, he complained to Defendant Laura Dennis, another LSCC Correctional Officer, about the alleged harassment and mental distress he was suffering because of Barker's

---

[2] Two of the disciplinary charges brought against Bruin, LSCC-2013-01114 (destroying or tampering with safety devises) and LSCC-2013-01115 (disruptive conduct), were later dismissed for various reasons. [*Id.*, ¶¶ 28-29; *see also* D. E. No. 1-2, p. 1 (dismissing LSCC-2013-01115) and D. E. No. 1-4, p. 1(dismissing LSCC-2013-01114)]. Bruin suffered no disciplinary consequences as a result of those two charges. The third write-up brought against Bruin, LSCC-2014-00128, charged Bruin with "Unauthorized Transfer of Money or Property." [D. E. No. 1-5, pp. 3-4] On February 19, 2014, the EKCC Adjustment Committee found Bruin guilty of this offense and ordered him to serve 30 days in disciplinary segregation, but did not order Bruin to forfeit any good-time credits. [*Id.* p. 3]

actions, and that he told Dennis, "I've taken matters into my own hands." [*Id.*, ¶ 35] Bruin claims that Dennis incorrectly interpreted his statement as a threat and ordered him to report to two Internal Affairs officials (Defendants Crouch and Holbrook) for further questioning, and that during the interview, he reiterated that Barker and Barker's subordinates had been harassing him and filing false disciplinary reports against him. [*Id.*, ¶¶ 36-37] Bruin alleges that Crouch and Holbrook told him that they would be placing him in administrative detention to ensure his safety and the safety of others. [*Id.*, ¶¶ 36-38] It is unclear from the complaint if Bruin is complaining about his placement in administrative detention.

Bruin alleges that on February 7, 2014, Dennis filed a disciplinary report against him, alleging that on January 31, 2014, Bruin had made a threatening or intimidating statement or remark. [*Id.*, p. 6, ¶ 39] On February 7, 2014, the LSCC Adjustment Committee found Bruin guilty of the offense, and ordered him to serve 45 days in disciplinary segregation and to forfeit 60 days of statutory good-time credits. [*Id.*, ¶ 40] Bruin states that he complained to the Kentucky Department of Corrections ("KDOC") about the disciplinary segregation sanction. [*Id.*, ¶ 41] Bruin further alleges that he filed a declaratory rights action in the "Elliot Judicial Center," and requested that Defendant Matthew Fyffe, LSCC Case Treatment Officer, deduct the pre-paid postage costs from his inmate account. [*Id.*, ¶ 42]

Bruin alleges that on February 28, 2014; on March 7, 2014, and on March 10, 2014, LSCC mail room employees opened his incoming mail from the Elliot Circuit Court outside of his presence; tampered with his legal mail; and copied his legal mail without his knowledge or consent. [*Id.*, pp. 6-7, ¶¶ 45; 48; p. 8, ¶ 51]

Bruin states that on March 14, 2014, he was again taken to Internal Affairs, and that Defendants Crouch and Holbrook questioned him about his letters to the KDOC, in which he had complained about alleged harassment. [*Id.*, p. 8, ¶¶ 51-53] Bruin claims Crouch and Holbrook again told him that he would be placed in administrative segregation, *id.*, ¶ 54. Bruin's other allegations about this particular encounter (set forth in ¶ 55 of his complaint) are extremely confusing, and as noted, it is unclear if Bruin is complaining about his placement in administrative segregation. Bruin does allege that Defendant Laura Dennis "...did not have his best interests at heart when [she] had Plaintiff sanctioned state for exercising his constitutional right to redress of grievance, failed to investigate." [*Id.*, ¶ 55]

Bruin states that Defendant Adam Bear, EKCC Postal Technician, deducted money from his inmate account to cover the cost of pre-paid postage for some of his out-going mail, but his allegations concerning Bear are unclear. [*Id.*, p. 9, ¶ 57; ¶ 59] Bruin appears to be alleging that although Bear assessed his inmate account for postage fess associated with his out-going mail, Bear instead improperly

4

forwarded his out-going mail to Internal Affairs for review and inspection. Bruin apparently wrote to Bear complaining about Bear's actions of transmitting his mail to Internal Affairs, and Bear apparently forwarded Bruin's complaint to Defendant Holbrook of the Internal Affairs Office. On March 17, 2014, Holbrook sent Bruin a memorandum stating that Bear had properly complied with KDOC Corrections Policy and Procedure 16.2, and had improperly forwarded Bruin's outgoing and incoming legal mail to Internal Affairs for inspection. [D. E. No. 1-15, pp. 1-2] Holbrook also informed Bruin that "any further harassing correspondence to the staff at the Little Sandy Correctional Complex can result in disciplinary action being taken." [*Id.*, p. 1]

As to specific legal claims, Bruin alleges in "Count One" that Defendant Laura Dennis "failed to investigate" his "redress" and that by failing to investigate his harassment allegations against Barker, Dennis was merely protecting Defendant Barker's interests. [*Id.*, pp. 9-10; ¶¶ 60-65] In "Count Two," Bruin alleges that when Defendant Holbrook told him that any further correspondence to any LSCC staff member would result in disciplinary action, Holbrook "demonstrated indifference..." [*Id.*, p. 10, ¶ 68] Bruin then cites a Pennsylvania case which, he explains, holds that lost wages constitutes "physical injury leading

to mental anguish," and that 42 U.S.C. § 1997e(e) does not require him to show a physical injury as part of a claim alleging emotional distress. [*Id.*, ¶¶ 68-70]

Bruin labeled "Count Three" as "Breach of Mail." [*Id.*, p. 11] Bruin's factual allegations on this issue are disjointed and difficult to follow; he states that he filed a petition seeking declaratory relief in the Elliot Circuit Court, but then states, "...response within days. Plaintiff is already deprived of his right to redress, now the fear of litigation whereof." [*Id.*, ¶ 72] Bruin further alleges that Defendants Leach and Bear "molested, read, and mishandled" his mail, *id.*, ¶ 75; that he notified Warden Meko and Deputy Warden Green about the alleged interference with his mail by Defendants Leach and Bear, *id.*, p. 12, § 79; but that neither Defendant Meko or Green responded to his complaint. [*Id.*]

Bruin seeks damages of no less than $25,000 to compensate him for the defendants' alleged "deliberate and intentional misconduct." [*Id.*, p. 13]

## DISCUSSION
### 1. Claims Alleged in Count One

In Count One of the complaint, Bruin alleges that Defendant Barker verbally harassed him on numerous occasions between September 2013 and January 2014. Bruin claims that their actions violated his rights under the Eighth Amendment of the U.S. Constitution, which guarantees freedom from cruel and

unusual punishment. This claim will be dismissed for failure to state a claim upon which relief can be granted.

Only deprivations denying "the minimalized measure of life's necessities" constitute and Eighth Amendment violation. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Verbal abuse, harassment, and arbitrariness in dealing with inmates, while not condoned, do not violate the Eighth Amendment of the U.S. Constitution. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)

Bruin further alleges that the verbal harassment he allegedly suffered by the LSCC defendants also caused him to experience emotional distress, but federal law prevents inmates from asserting claims of emotional distress absent some type of accompanying physical injury. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). *See also Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1999) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) ("[A] claim of psychological injury does not reflect the deprivation of 'the minimal civilized measures of life's necessities,' that is the touchstone of a conditions-of-

confinement case"); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005). Because Bruin does not allege that he sustained any type of physical injury, his claims alleging emotional distress will be dismissed as frivolous.

Bruin next alleges that LSCC Correctional Officer Laura Dennis, Warden Joseph P. Meko, and/or Deputy Warden James David Green failed to respond to his various administrative grievances in a manner which he deemed appropriate, and that the LSCC's grievance process was unsatisfactory or unresponsive to his concerns. Bruin thus alleges that he was denied due process of law guaranteed under the Fourteenth Amendment of the U.S. Constitution as applied to prisoners held in state custody. On this issue Bruin states no claim because prisoners have no inherent constitutional right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Overholt v. Unibase Data Entry, Inc.*, 221 F.3d 1335, 2000 WL 799760, at *3 (6th Cir. June 14, 2000) (Unpublished Table decision); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991).

Bruin admits that on January 31, 2014, he told Defendant Laura Dennis that because he was dissatisfied about her failure to respond to his complaints that Barker was verbally harassing him, he had "taken matters into his own hands," [D. E. No. 1, p. 5, ¶ 35] Bruin contends that Dennis misinterpreted his remark as a

threat, and he takes issue with the fact that Dennis reported his comment to Crouch and Holbrook. As a result of his verbal statement to Dennis, Bruin was charged with making a threatening or intimidating statement. *See* Disciplinary Report Form, LSCC-2014-00167 [D. E. No. 4-1, pp. 3-4]. The disciplinary hearing transpired on February 19, 2014, after which Bruin was found guilty of the charged offense and ordered to forfeit 60 days of statutory good time credits. [*Id.*, pp. 5-6;] Bruin appears to be collaterally challenging his disciplinary conviction in this § 1983 proceeding.

Because Bruin was convicted of a prison disciplinary offense, he cannot seek damages under § 1983 unless and until he can demonstrate a favorable termination of his disciplinary convictions. In *Heck v. Humphrey*, the Supreme Court established the so-called "favorable termination rule." 512 U.S. 477, 114 S.Ct. 2364 (1994). The Court explained that rule as follows:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Id., at 486-87.

The Supreme Court has held that any claim for damages that, if successful, would "necessarily imply" the "invalidity of any outstanding criminal judgment against the plaintiff" is not cognizable under § 1983 unless the plaintiff demonstrates that judgment's prior invalidation. *Id.*, at 487. This rule promotes the finality of and consistency in judicial resolutions by limiting opportunities for collateral attack and averting the "creation of two conflicting resolutions arising out of the same or identical transaction." *See id.*, at 484-485.

In *Edwards v. Balisok*, the Supreme Court later extended the "favorable termination rule" to a prison disciplinary hearing resulting in the deprivation of good-time credits, where the prisoner's civil rights action alleging the denial of his due process rights would "necessarily imply" the invalidity of the deprivation of good-time credits. 520 U.S. 641, 646 (1997). The Supreme Court has subsequently clarified that a prisoner is required to show a favorable termination of his disciplinary proceeding before filing a civil action in cases where the duration of his sentence is affected. *Muhammad v. Close*, 540 U.S. 749, 754-55, 124 S.Ct. 1303, 1306 (2004).

Bruin seeks monetary damages from the defendants who were involved in his disciplinary conviction which resulted in the loss of his good-time credits, but he has been found guilty of a making a threatening or intimidating statement, a

violation of KDOC regulations. If Bruin were to succeed in this § 1983 action on his claim(s) challenging some factual aspect of his disciplinary conviction, he would thus necessarily be invalidating the disciplinary determination through which he lost 60-days of good-time credits.

A prisoner found guilty in a prison disciplinary hearing cannot use § 1983 to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction. *See Huey v. Stine*, 230 F.3d 226, 230-31 (6th Cir. 2000); *see also Lewis v. Pendell*, 90 F. App'x 882, 883 (6th Cir. 2004) (finding that prisoner was precluded from collaterally attacking prison misconduct hearing or conduct underlying disciplinary conviction by alleging retaliation under 42 U.S.C. § 1983, where favorable ruling on his retaliation claim would imply invalidity of disciplinary conviction); *Denham v. Shroad*, 56 F. App'x 692, 693 (6th Cir. 2003) ("Because a favorable ruling on Denham's Eighth Amendment claim [alleging excessive use of force by prison officials] would imply the invalidity of his disciplinary conviction, this claim is not cognizable.") Because the loss of good-time credits directly affects the duration of Bruin's prison sentence, Bruin must demonstrate a "favorable determination" of his prison disciplinary conviction under *Edwards* and *Muhammad* before he can seek damages related to that conviction under § 1983.

To establish a favorable termination, Bruin must first successfully challenge the validity of his disciplinary conviction by filing of writ of habeas corpus under 28 US.C. § 2254 or 28 U.S.C. §2241. Bruin must first fully administratively exhaust these claims within the KDOC's administrative four-step remedy process. If, and only if, his prison disciplinary conviction is invalidated during that process, may Bruin then bring a civil action challenging the actions which resulted in his disciplinary conviction. Bruin's claim challenging his disciplinary conviction in this action will therefore be dismissed without prejudice to his filing a writ of habeas corpus under either § 2254 or § 2241, and obtaining a favorable termination of his disciplinary conviction.

Finally, to the extent that Bruin claims that LSCC Warden Joseph P. Meko and/or Deputy Warden James David Green denied his grievances or verbal complaints, or that they failed to adequately investigate the claims contained in his grievances or verbal complaints, he does not assert a valid Fifth Amendment due process claim, because the mere denial of prisoner grievances by supervisory or higher-ranking administrative officials is insufficient personal involvement for imposing § 1983 liability. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Alder v. Corr. Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003); *Martin v. Harvey*, 14 F. App'x 307, 309-10 (6th Cir. 2001). For these reasons, the claims

which bruin asserted in Count One of his complaint will be dismissed for failure to state a claim upon which relief can be granted.

## 2. Claims Alleged in Count Two

In Count Two of the complaint, Bruin alleges that the defendants failed to protect him from harm in violation of his rights guaranteed under the Eighth Amendment of the U.S. Constitution. Bruin claims that when Defendant Holbrook informed him that he (Bruin) would face disciplinary action if he filed any more frivolous grievances, Holbrook was being deliberately indifferent to him.

The Supreme Court has held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks and citation omitted). To establish a prima facie claim that defendants were deliberately indifferent to a prisoner's need for protection from assault by another inmate, the prisoner's allegations must satisfy an objective component and a subjective component. *Id.*, at 835–38. The objective component is satisfied by allegations that absent reasonable precautions, an inmate is exposed to a substantial risk of serious harm. *Id.*, at 836. To satisfy the subjective component, a prisoner must allege that the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if reasonable measures were not taken, that the defendant actually

drew the inference, and that the defendant acted in disregard of that risk. *Id.*, at 837. *See also Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010).

Here, Bruin does not allege facts which even remotely suggest that he was exposed to *any* harm, much less to a "substantial risk of serious harm." Bruin's claims are based on alleged verbal threats from Defendant Holbrook, but as noted, verbal abuse or verbal threats by a prison official toward an inmate cannot form the basis of a § 1983 claim, because such conduct does not amount to deliberate indifference. *Ivey*, 832 F.2d at 955. Bruin again claims that he has been harmed because he has suffered emotional distress caused by the defendants' alleged actions. As discussed, however, a prisoner cannot assert a claim for damages under § 1983 based on emotional distress where he has not demonstrated the existence of a physical injury, *see* 42 U.S.C. § 1997e(e), and Bruin has not alleged the existence of an accompanying physical injury. Bruin therefore fails to state a claim upon which relief can be granted under Count Two of his complaint.

### 3. **Claims Alleged in Count Three**

In "Count Three," labeled "Breach of Mail," Bruin alleges that Defendants Justin Leach (LSCC Correctional Officer) and Adam Bear (LSCC Mail Custodian) "molested, read, and mishandled" his incoming legal mail relating to a civil case which he had filed in the Elliot Circuit Court. [D. E. No. 1, p. 11, ¶ 75] Earlier in

his complaint, Bruin suggested, but did not specifically allege, that Defendant "C." Bossio may have improperly opened his incoming privileged mail from the Jefferson County Court. [*Id.*, p. 7; ¶ 48]   Bruin also indicates that Defendants Matthew Fyffe and Correctional Officer Reynolds interfered with or mishandled his privileged mail. [*Id.*, pp. 6-9, ¶¶ 53-59]

KDOC Policy and Procedure ("CPP") 16.2, Section I, defines "Privileged mail" as follows:

> "Privileged mail" means correspondence received or sent from or to a licensed attorney, a government official, state or federal courts, officials of Corrections, or the Department of Public Advocacy. **Mail shall not be considered privileged mail if it does not concern a challenge to the legality of either the inmate's criminal conviction or the conditions of his incarceration.** Information, forms, and the like shall not be considered privileged mail. (Emphasis added)

*Id.*, (effective Feb. 3, 2014).   Further, CPP 16.2, § II (C)(1) states: "Incoming privileged mail shall be opened in the presence of the inmate and inspected for contraband." *Id.* Finally, CCP 16.2 (C)(3) provides:

> Incoming privileged mail shall not be read if the sender is adequately identified on the envelope and the purpose of the mail is not an issue in determining whether it should be considered privileged mail. **In the absence of adequate identification or a question about the purpose, staff may open and inspect the mail to ascertain whether it is, in fact, privileged mail.**" (Emphasis added)

Bruin alleges that he filed a declaratory action in the Elliot Circuit Court on February 24, 2014, and that on February 28, 2014, he discovered that his incoming

mail from the Elliot Circuit Court had been opened outside of his presence. [D. E. No. 1, p. 6, ¶ 42-44][3] The LSCC is located in Sandy Hook, Kentucky, which is located in Elliot County, Kentucky. If Bruin intended to file a state court action, or a declaratory action, challenging his conditions of confinement at the LSCC, he would have done so in the Elliot Circuit Court. Bruin states that Exhibit "L" attached to his complaint is a copy of the improperly opened envelope from the Elliot Circuit Court, but the copy of the envelope in question which he attached [D. E. No. 1-9] is not legible. Accepting Bruin's allegation as true, which the Court must do, the mailing from the Elliot Circuit Court *could* qualify as "Privileged Mail" under CPP 16.2, subject to further explanation from the defendants. If so, that mailing should have been opened in his presence.

Bruin also alleges that on March 7, 2014, the defendants mishandled his incoming mail from the Jefferson County Clerk. Bruin is serving criminal sentences imposed by the Jefferson Circuit Court in 2011. *See* http://kool.corrections.ky.gov/KOOL/Details/133496 (last visited on August 27, 2014). The mailing in question [D E. No. 1-11] was clearly sent by Bobbie Holsclaw, Jefferson County Clerk. *See id.*, Return Address; *see also* D. E. No. 4-1,

---

[3] Bruin's supplemental filing dated April 18, 2014, indicates a different date for that mailing. Bruin attached some type of postal record showing that a mailing to him, listing the return address of the Kentucky Attorney General in Frankfort, Kentucky, was received on February 28, 2014. [D. E. No. 4-1, p. 11]. Bruin attached another postal receipt showing that a mailing to him, listing the return address of the Elliot Circuit Clerk in Sandy Hook, Kentucky, was received on March 4, 2014. [*Id.*, p. 12].

p. 13. Thus, it is possible that the mailing from Jefferson County Clerk Bobbie Holsclaw could have been related to Bruin's state court convictions and sentences, which he is currently serving, and that the mailing may also qualify as "privileged mail" under CPP 16.2, subject to further information from the defendants. If that is the case, it also should have been opened in Bruin's presence.

The issue is not as clear as to the March 10, 2014, mailing from the Louisville Metro Revenue Commission [D. E. No. 1-12]. Bruin was convicted in the Jefferson Circuit Court, however, so that mailing could have been related to a criminal fine or restitution, if either or both were imposed as part of his criminal sentences. If so, that mailing could qualify as "privileged mail" under CPP 16.2, subject to further explanation from the defendants. If that is the case, the mailing should have been opened in Bruin's presence.

The Court notes that Bruin has not alleged any type of actual injury or actual harm with respect to his mail tampering claims, *see Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). However, the record requires further development on these issues and at this juncture, the Court will require Defendants "C." Bossio (LSCC Correctional Officer); Adam Bear (LSCC Mail Room Custodian); Justin Leach (LSCC Correctional Officer); Defendant

Matthew Fyffe (LSCC Case Treatment Officer) and Defendant Reynolds (LSCC Correctional Officer) to respond to Bruin's First Amendment claims alleging the mishandling of his incoming "privileged mail." For the reasons explained in the preceding discussions, all other claims which Bruin has asserted will be dismissed.

Because the Court has granted Bruin pauper status, the Ashland Clerk's Office and the United States Marshals Service ("USMS") will serve the summons and complaint on these four defendants on his behalf. Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d).

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

1.     Plaintiff Brandon Bruin's Eight Amendment claims alleging verbal harassment and infliction of emotional distress by the LSCC defendants are **DISMISSED WITH PREJUDICE**.

2.     Bruin's Fourteenth Amendment claims alleging the denial of due process of law in connection with the LSCC grievance process are **DISMISSED WITH PREJUDICE**.

3.     Bruin's Fourteenth and/or Eighth Amendment claims challenging his February 19, 2014, disciplinary conviction, and the loss of 60 days of good-time

credits, are **DISMISSED WITHOUT PREJUDICE** to Bruin's right to assert such claims in petition for writ of habeas corpus.

4. Bruin's Eight Amendment claims alleging that the LSCC defendants were deliberately indifferent to him, and/or that they failed to protect him from harm, are **DISMISSED WITH PREJUDICE**.

5. The following individuals are **TERMINATED** as defendants from this proceeding: (a) Joseph P. Meko (LSCC Warden); (b) James David Green (LSCC Deputy Warden); (c) Paul Crouch (LSCC Captain); (d) Jerry Barker (LSCC Sergeant); (e) "Holbrook (LSCC Correctional Officer); and (f) Laura Dennis (LSCC Correctional Officer);

6. Bruin's First Amendment claims alleging that Defendants "C." Bossio (LSCC Correctional Officer); Adam Bear (LSCC Mail Room Custodian); Justin Leach (LSCC Correctional Officer); Defendant Matthew Fyffe (LSCC Case Treatment Officer) and Defendant "Reynolds" (LSCC Correctional Officer) improperly opened or mishandled his incoming "privileged mail" shall proceed.

7. A Deputy Clerk in the Ashland Clerk's Office shall prepare a "Service Packet" for Defendants Bossio, Bear, Leach, Fyffe, and Reynolds. The Service Packet shall include:

(a)     a completed summons form;

(b)     the complaint [D. E. No. 1] and supplement [D. E. No. 4]

(c)     this Order; and

(d)     a completed USM Form 285.

8.     The Ashland Deputy Clerk shall send the Service Packets to the USMS in Lexington, Kentucky.

9.     The USMS is responsible for ensuring that all defendants are successfully served with process. In the event that an attempt at service upon any defendant is unsuccessful, the USMS shall make further attempts and shall ascertain such information as is necessary to ensure successful service

10.     Within 40 days of the date of entry of this Order, the USMS Office shall send a Service Report to the Ashland Clerk's Office, which the Deputy Clerk shall file in the record, which states whether service has been accomplished with respect to each Defendant.

(a).     If a defendant is served by certified mail, the Service Report shall include:

(1).     a copy of the green card showing proof of service; or

(2).     a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.

(b).    If a defendant is personally served, the Service Report shall indicate:

(1).    that the defendant was successfully served personally, or

(2).    a statement explaining why the defendant could not be serves and what efforts are being taken to locate the defendant and accomplish personal service.

11.    Bruin must immediately advise the Ashland Clerk's Office of any change in his current mailing address. **Failure to do so may result in dismissal of this case**. Bruin must communicate with the Court *solely* through notices or motions filed with the Ashland Clerk's Office. **The Court will disregard correspondence sent directly to the judge's chambers.**

12.    With every notice or motion filed with the Court, Bruin *must* (a) mail a copy to each defendant (or his or her attorney); and (b) at the end of the notice or motion, certify that he has mailed a copy to each defendant (or his or her attorney) and the date on which this was done. **The Court will disregard any notice or motion which does not include this certification.**

This September 8, 2014.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge