UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | | |
|---|---|---|
| BRANDON R. BRUIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-CV-57-HRW |
| | ) | |
| V. | ) | |
| | ) | MEMORANDUM OPINION |
| WARDEN JOSEPH P. MEKO, *et al.*, | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

**** **** **** ****

The Court considers the Motion for Summary Judgment [D. E. No. 19] filed

by Defendants Carl Bossio, Adam Bear, Justin Leach, Matthew Fyffe, and Jackie

Reynolds, all of whom are, or were, officials employed at the Little Sandy

Correctional Complex ("LSCC") located in Sandy Hook, Kentucky; the Response

filed by Plaintiff Brandon R. Bruin [D. E. No. 21]; and the Defendants' Reply [D.

E. No. 22] to Bruin's Response.  As explained below, the Court will grant the

Defendants' Motion for Summary Judgment.

## BACKGROUND

Bruin is an inmate confined by the Kentucky Department of Corrections

("KDOC") in the Eastern Kentucky Correctional Complex ("EKCC") which is

1

located in West Liberty, Kentucky.   In April 2014, Bruin, proceeding without

counsel, filed this 42 U.S.C. § 1983 civil rights action in which he alleged that

between September  2013 and January 2014, he was confined in the LSCC, and

that while confined there, various LSCC officials violated his federal constitutional

rights. [D. E. No. 1; supplemented at D. E. No. 4]  On September 8, 2014, the

Court screened Bruin's § 1983 complaint and dismissed several claims which

Bruin had asserted, but directed Defendants Bossio, Bear, Leach, Fyffe, and

Reynolds to respond to Bruin's claim that they had improperly handled his

incoming legal mail in violation of his rights guaranteed under the First

Amendment of the U.S. Constitution. [D. E. No. 9]

The Defendants have now filed a motion seeking summary judgment,

asserting therein two arguments.   Their first argument is that Bruin failed to

comply with the grievance process set forth in the KDOC's Corrections Policies

and Procedure ("CPP") 14.6 § II (J)(1)-(4),[1] which lists the administrative steps

that KDOC inmates must pursue prior to filing a lawsuit.  The Defendants assert

---

[1]   CPP 14.6 § II (J) dictates the procedures which inmates must pursue if they are submitting grievances related to non-medical issues; CPP 14.6 § II (K) sets forth the procedures which inmates must pursue if they are submitting grievances concerning medical issues.

Pursuant to CPP 14.6 § II (J), a KDOC inmate must file a written grievance and seek an Informal Resolution, which may involve the Grievance Aide, Grievance Coordinator, Department Head, or Institutional Staff [§ II(J)(1)(a) and (b)] ("Step 1"). If not satisfied, he must submit a written request to the Grievance Committee seeking a hearing to consider his grievance [§ II (J)(2)] ("Step 2").  If not satisfied with the Grievance Committee's disposition, he must appeal to the Warden [§ II (J)(3)] ("Step 3").  Finally, if dissatisfied with the Warden's decision, the inmate must file an appeal to the Commissioner of the KDOC [§ II( J)(4) ] ("Step 4").  Time frames for appeals and responses are established within the regulations.

that the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and a long

line of United States Supreme Court decisions that have interpreted the PLRA,

require prisoners to exhaust prison grievance procedures before filing suit, and that

Bruin's documented failure to comply with all of the steps set forth in CPP 14.6 §

II (J) prevents this Court from addressing the merits of his First Amendment claim.

In support of this argument, the Defendants have attached the sworn

Affidavit of John M. Dunn, the Central Office Ombudsman for the KDOC. [D. E.

No. 19-4]  Dunn states that he is the custodian of grievances which the KDOC

maintains in its Central Office in its regular course of its business, *id.*, p. 1, ¶¶ 1-4;

that in his capacity as Ombudsman, he has access to the records of all grievances

which the KDOC Commissioner has received during the inmate appeal process,

*id.*; and that the KDOC's records contain no grievance appeals filed by Bruin

concerning the handling of his legal mail. [*Id.*, ¶ 5]

The defendants assert that Bruin may have *initiated* the KDOC's grievance

process as to his First Amendment claim, but that based on Dunn's Affidavit,

Bruin did not *complete* the administrative review process by following all of the

required steps set forth in CPP 14.6 § II (J); specifically, Bruin did not appeal his

grievance to KDOC Commissioner in compliance with CPP 14.6 § II (J)(1)-(4).

The defendants therefore assert that because Bruin did not properly exhaust his

First Amendment claims in compliance with the KDOC's applicable regulations, he did not properly exhaust his claims under the PLRA, and that his claims for money damages against them should therefore be dismissed.

The Defendants' second argument is that Bruin's request for injunctive relief regarding the handling of his mail at the LSCC has become moot because Bruin is now incarcerated in the EKCC. They cite Sixth Circuit cases which they contend stand for the proposition that an inmate's transfer renders moot his request for injunctive relief from the institution in which he was previously confined.

Bruin's response [D. E. No. 21-1] is not a model of clarity, but he appears to be claiming that he was not required to plead in his complaint facts relating to the issue of exhaustion, and that the exhaustion issue is only an affirmative defense; (2) that he was transferred to the EKCC "...to avoid litigation and the exposure of Official Misconduct of the Defendants acts and Omissions," *id.* p. 2; that his subsequent transfer to the EKCC prevented him from complying with the KDOC's administrative grievance process; and (4) that he filed a grievance and received a Memorandum dated March 17, 2014 from the LSCC Internal Affairs Department dated [D. E. No. 21-3] relative to his First Amendment mail-handling claims. Bruin presumably contends that the March 17, 2014, Internal Affairs

Memorandum documents that he administratively exhausted his First Amendment claims challenging the Defendants' handling of his inmate mail.

In their Reply [D. E. No. 22], the Defendants reiterate that Bruin's demand for injunctive relief was rendered moot by reason of his subsequent transfer to the EKCC; that the March 17, 2014, Internal Affairs Memorandum which Bruin has provided is merely the LSCC's written response to a letter which Bruin sent to Adam Bear; that the Internal Affairs Memorandum does not demonstrate that Bruin complied with CPP 14.6 § II (J); and that Bruin provided no documentation substantiating his broad assertion that he properly exhausted his First Amendment claim. On the latter issue, the Defendants explain that Bruin's actions of merely initiating the grievance process and/or sending an informal letter of complaint to Defendant Adam Bear is not same as complying with the specific administrative exhaustion steps set forth in CPP 14.6 § II (J) (1)-(4).

Finally, the Defendants contend that Bruin's transfer to the EKCC did not prevent him from exhausting his First Amendment claims, noting that CPP 14.6 § II (M) specifically addresses transfers, and provides that if an inmate is transferred from the institution for any reason, he may appoint another inmate to act in his place by submitting the appointment to the Grievance Coordinator in writing.

## DISCUSSION

The Court will first address the Defendants' argument that Bruin's request for injunctive relief as to the handling of his inmate mail became moot by reason of his subsequent transfer to the EKCC, and Bruin's response that such claims have not become moot.  In short, any request for injunctive and/or declaratory relief from LSCC officials became moot when Bruin was transferred from the LSCC to the EKCC. *See Nunez v. FCI-Elkton*, 32 F. App'x 724, 726 (6th Cir. 2002) ("To the extent that Nunez asserted a claim for injunctive relief against the defendants based upon their alleged failure to open his legal mail in his presence, his claim is moot in light of his transfer from FCI Elkton to MDC Brooklyn."); *Hayes v. Berguis*, 40 F. App'x 18, 21 (6th Cir. 2002) (transfer mooted prisoner's demand for injunctive relief); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same).

The second and final issue which the Court must address is whether Bruin fully and properly exhausted his First Amendment claims against the Defendants. As an initial matter, Bruin correctly notes that a prisoner is not be required to specifically plead or demonstrate exhaustion in his complaint, *see Jones v. Bock*, 549 U.S. 199, 127 8 (2007), and that a prisoner's failure to exhaust under § 1997e(a) is an affirmative defense on which the defendant bears the burden of proof. *Id.* However, these undisputed facts do not assist Bruin here, because the

6

when Court conducted the initial screening of his § 1983 complaint on September 8, 2014, it did not dismiss any claims *sua sponte* based on lack of exhaustion; instead, the Court required the five remaining defendants to respond to Bruin's First Amendment claims.

Having been duly served with process, the defendants now argue in a motion for summary judgment (supported by a sworn Affidavit) that Bruin failed to properly exhaust his constitutional claims according to the KDOC's four-step administrative remedy process. Thus, the defendants have utilized the correct procedural mechanism for asserting their argument that Bruin failed to properly exhaust his First Amendment claims. *See Hood v. Ford Motor Company*, No. 11-10649, 2011 WL 3651322, at *8 (E.D. Mich. Aug 19, 2011) ("As an affirmative defense, then, 'a Rule 12(b)(6) motion is generally not the proper vehicle for asserting lack of exhaustion.'…. The right vehicle is a 'properly supported motion for summary judgment.'" (citation omitted); *Baker v. Holder*, No. 0:06-CV-91-HRW, 2010 WL 1334924, at *2 (E.D. Ky. March 30, 2010) (finding that the defendants could assert the defense of lack of exhaustion either in a motion to dismiss filed under Rule 12(b)(6) or by way of a motion for summary judgment under Rule 56); *Aguirre v. Corrections Corp. of America*, No. 4:08-CV-02365, 2009 WL 2423702, at *3 (N.D. Ohio Aug. 3, 2009) (recommending that the

Defendant's Rule 12(b)(6) motion based on failure to exhaust be converted into a motion for summary judgment under Rule 56).

Further, because the defendants have submitted a sworn affidavit outside of the pleadings, the Court can properly address their argument in the context of a motion for summary judgment under Federal Rule of Civil Procedure 56. *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993); *Smith v. The Cheesecake Factory Restaurants, Inc.*, No. 3:06-00829, 2010 WL 441562, at* * 3–4 (M.D. Tenn. Feb. 4, 2010) (court converted motion to dismiss to motion for summary judgment where both parties relied on proof that fell outside pleadings).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341–42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the nonmoving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The non-moving party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrate that factual questions remain for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003). The Court will thus examine the record to determine if the defendants have carried their burden of proof on the issue of administrative exhaustion.

The Defendants correctly assert that under the PLRA, a prisoner must exhaust administrative remedies before he may sue in federal court, whether the cause of action is based upon prison conditions under 42 U.S.C. § 1983 or any other federal law. 42 U.S.C. § 1997e(a).[2] They further correctly state that exhaustion under the PLRA is mandatory. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *Porter v. Nussle*, 534 U.S. 516, 520 (2002).

In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court interpreted the mandatory exhaustion language in 42 U.S.C. § 1997a(a) as requiring "proper exhaustion," meaning that a prisoner must "make full use of the prison grievance process" and "compl[y] with the system's critical procedural rules." *Id*. at 93–95.

---

[2] Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The Supreme Court explained that the exhaustion serves two purposes, the first of which is that it gives an agency "'an opportunity to correct its own mistakes with respect to the program it administers before it is haled into federal court,'" and discourages "'disregard of [the agency's] procedures.'"   *Id.*, at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

The Supreme Court identified the next purpose of the exhaustion process as promoting efficiency, because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*  The Court explained that proper exhaustion of administrative remedies requires "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91 (footnote omitted).  The Court further noted that the purpose of a grievance in the prison context is "to alert prison officials to a problem." *Bock*, 549 U.S. at 219, (citing *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004)).

Here, Bruin's actions, or more appropriately, his inactions, with respect to the administrative exhaustion process did not afford the KDOC a full and fair opportunity to address his First Amendment claims in accordance with the above considerations.  As noted, the KDOC's four-step administrative remedy process is

10

set forth in CPP 14.6 § II (J), but the sworn Affidavit of John M. Dunn establishes that Bruin did not appeal to the KDOC Commissioner the denial of any grievance pertaining to his legal mail. [D. E. No. 19-4, p. 1]  Even accepting as true Bruin's unsupported assertion that he *began* the administrative remedy process while confined in the LSCC, Bruin has produced nothing to substantiate his claim that he fully and properly *completed* all of the KDOC's exhaustion requirements set forth in CPP 14. 6 § II (J).  In other words, Bruin has produced nothing controverting Dunn's sworn statement that the KDOC's official records contain no records showing that he appealed any adverse administrative decisions to the Commissioner of the KDOC, as required by CPP 14.6 § II (J)(4).  This was the fourth and final step which Bruin was required to take, and unless and until he took that step, he did not properly comply with the KDOC's four-step administrative exhaustion process as required by the PLRA and *Woodford v. Ngo.*

Bruin states that he wrote a letter to Defendant Adam Bear complaining about the alleged mishandling of his mail, to which he received a reply from the LSCC Internal Affairs Department, and he suggest that he submitted informal memoranda to other prison officials advising of his dissatisfaction with the handling of his mail.  However, such actions do not suffice as substitutes for compliance with the specific exhaustion steps set forth in CPP 14.6 § II (J).

11

The Sixth Circuit has repeatedly held that an inmate must strictly follow the prison's grievance procedures. Letters and petitions are therefore no substitute for a formal inmate grievance. *Shephard v. Wilkinson*, 27 F. App'x 526, 527 (6th Cir. Dec. 5, 2001) ("While Shephard asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims."); *Hewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. Sept. 21, 2001) (same); *see also Clark v. Beebe*, No. 98-1430, 1999 WL 993979, at *2 (6th Cir. Oct. 21, 1999) (district court erred in holding that prisoner had substantially complied with exhaustion requirement by writing a letter to the U.S. Attorney's office that eventually made its way to the warden of plaintiff's prison). Thus, whatever informal complaints Bruin lodged at the LSCC did not relieve him of his duty to comply with the specific requirements steps set forth in CPP 14.6 § II (J).

Further, regardless of whatever grievance steps Bruin may (or may not) have begun or pursued at the institutional level, the defendants correctly argue that Bruin's subsequent transfer to the EKCC did not prevent him from either beginning the administrative grievance process (assuming that he did in fact being it at the LSCC), or completing any of the steps that he might have begun while

confined at the LSCC.  The Defendants correctly point out that an inmate who is transferred can invoke the provisions of CPP 14.6 § II (J) by appointing an inmate proxy to advance his administrative appeal in his name.  Bruin, however, alleges no facts indicating that he took any steps to avail himself of the procedures set forth in CPP 14.6 § II (J) and thus protect and perfect his administrative appeal obligations.  This Court adheres to the general rule that a prisoner's subsequent transfer to another prison facility does not relieve him of his obligation to administratively exhaust his claims at the facility where the claims arose.  *Mora v. Rios*, No. 7:11-CV-68-KKC, 2012 WL 381720, at *3 (E. D. Ky. Feb. 6, 2012) (citations omitted); *Wiley v. Boone County Sheriff's Office*, No. 2:09-CV-98-WOB, 2009 WL 2390164, at *3 (E.D. Ky. Aug. 4, 2009)

At the summary judgment stage, Bruin must do more than rely on conclusory statements.  *See Automated Solutions Corp. v. Paragon Data Systems, Inc.*, 756 F.3d 504, 521 (6th Cir. 2014); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."). Because Bruin has provided the Court with nothing but conclusory statements as to whether he fully and properly complied with the KDOC's administrative grievance process, and because no genuine issue of fact exists with respect to the fact that

Bruin did *not* properly and fully exhaust his First Amendment claims in compliance with CPP 14. 6 § II (J)(1)-(4), the Court will grant the Defendants' motion for summary judgment and enter judgment in their favor.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)   The Motion for Summary Judgment filed by Defendants, Carl Bossio, Adam Bear, Justin Leach, Matthew Fyffe, and Jackie Reynolds [D. E. No. 19] is **GRANTED**.

(2)   The Court will enter an appropriate Judgment.

(3)   This proceeding is **DISMISSED** and **STRICKEN** from the Court's active docket.

This March 10, 2015.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge